381 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**James J. FAIRELL, Jr., Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Jan. 20, 1977.

Decided Dec. 23, 1977.

Harvey A. Sernovitz, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant James J. Fairell was convicted at a non-jury trial of murder of the first degree and related weapons offenses. The sole issue in this appeal is whether the evidence at trial was sufficient to meet the Commonwealth's burden of proving beyond a reasonable doubt specific intent to commit murder, appellant having placed in issue his capacity to form such specific intent due to the use of narcotics.

Appellant was found guilty of murder of the first degree, guilty of possession of an instrument of crime generally, guilty of possession of an instrument of crime, i. e., a weapon, and not guilty of possessing a prohibited offensive weapon on October 6, 1975. Post-trial motions were denied and appellant was sentenced to life imprisonment on the charge of murder and to two and one-half to five years on

each of the weapons charges, sentences to run concurrently. These appeals followed.[1]

A summary of the facts of the case are as follows: On April 27, 1975, at or about 1:00 o'clock p.m., appellant entered the home of his wife's parents, Mr. and Mrs. Leroy Quartman, and, after a brief, threatening verbal exchange with those present, shot and killed his estranged wife Francine Quartman Fairell in the presence of her parents and other eyewitnesses. The cause of death was attributed to gunshot wounds of the head, right arm and back of thorax.

Appellant's defense at trial was that he was intoxicated by narcotics to the extent that at the time of the incident he was unable to form a specific intent to commit murder. This defense was put forward through the testimony of appellant's half-brother, John Nelson, and that of Dr. Albert M. Levitt, a psychologist. Dr. Levitt testified without objection that appellant had told him of appellant's use of drugs the day of the shooting and on other occasions.[2] Dr. Levitt also gave opinion testimony as to appellant's psychological make-up and the possible effect on appellant of the use of such drugs.[3]

1. Appellate jurisdiction of the murder conviction is in this Court by virtue of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, section 202, 17 P.S. § 211.202 § 1. The weapons convictions were appealed first to the Superior Court and by it certified to this Court. See Appellate Court Jurisdiction Act, *supra,* art. V, § 503, 17 P.S. § 211.503(a). The appeals were then consolidated.

2. Appellant told Dr. Levitt that on the day of the shooting he had purchased and ingested a "Fifteen dollar spoon of 'Monster'" and was under the influence of the drug at the time of the shooting. According to the record, "Monster" is a colloquial term for the amphetamine methedrine, i. e., methamphetamine, or "speed". Appellant made the same claim in his statement given to the police, which was introduced at the preliminary hearing, N. T. 17–19, 5/7/75. The statement was held admissible at the suppression hearing but was not introduced at trial.

The court stenographer numbered and bound the transcript of testimony for each day separately, without using consecutive page numbers throughout; therefore all citations necessarily refer to date as well as page number.

3. N. T. 62–99, 10/3/75.

John Nelson testified [4] that a few hours before the shooting he saw appellant in possession of a number of glassine envelopes containing a white powder and that Fairell appeared "high" and "not normal" to him.

■ Relying upon the well-settled proposition that the presumption of an accused's innocence in a criminal prosecution places upon the Commonwealth an unshifting burden to prove every element of the crime beyond a reasonable doubt, *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974) (hereinafter *Rose I* ); *Commonwealth v. Bonomo,* 396 Pa. 222, 229, 151 A.2d 441 (1959); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), appellant argues that the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt the presence of an essential element of murder of the first degree, the specific intent to kill.[5] The presence of such specific intent is, of course, a distinguishing feature of murder of the first degree under the Crimes Code as well as at common law. *Commonwealth v. O'Searo,* 466 Pa. 224, 235, 352 A.2d 30, 35 (1976); *Commonwealth v. Bricker,* 458 Pa. 367, 371, 326 A.2d 279, 281 (1974); *Commonwealth v. Mosley,* 444 Pa. 134, 139, 279 A.2d 174, 177 (1971); *Commonwealth v. Ewing,* 439 Pa. 88, 91, 264 A.2d 661, 667 (1970).

The Commonwealth responds to this argument with the assertion that the evidence as to appellant's intoxication, or drugged state, is at best equivocal, and that the total evidence adduced at trial, when coupled with the permissible inference of specific intent to kill from appellant's intentional use of a deadly weapon on a vital part of the victim's body, is sufficient to sustain a conviction of murder of the first degree. Appellant counters with the argument, some-

---

**4.** John Nelson was not present at trial but his testimony at the suppression hearing was by stipulation incorporated into the trial record as part of appellant's case-in-chief. N. T. 100, 10/3/75.

**5.** Murder of the first degree is a willful, deliberate and premeditated unlawful killing. Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, as amended by Act of March 26, 1974, P.L. 213, No. 46, § 4, immediately effective, 18 Pa.C.S. § 2502 (1975 Supp.).

what unclearly phrased, that once his capacity to form specific intent is in issue the Commonwealth may not rely alone upon the inference arising out of intentional use of a deadly weapon on a vital part.

While the deadly weapon inference, in the absence of other evidence relevant to intent, has been held sufficient standing alone to sustain a finding of murder of the first degree, *Commonwealth v. O'Searo, supra; Commonwealth v. White,* 442 Pa. 461, 463, 275 A.2d 75, 76 (1971); *accord, Commonwealth v. Ewing, supra,* we do not find it necessary to rely on this ground for disposition of the instant case. Our review of the record satisfies us that there was other evidence, discussed below, sufficient to establish appellant's capacity to form a specific intent.

█ Evidence which is sufficient to place in issue capacity to form a specific intent due to intoxication may come from any source and at any stage of the trial, including the case-in-chief of the defense or prosecution, or the cross-examination of any witness. *Rose I, supra; Commonwealth v. Haywood,* 464 Pa. 226, 346 A.2d 298 (1975). The defendant need not raise the issue of his intoxication through a deliberate and formal offering of evidence on that subject.

█ Evidence of intoxication, if believed, may operate to negate the intent necessary for conviction of murder in the first degree. Crimes Code, § 308, Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973.[6] Such

---

**6.** At the time of the trial, § 308 of the Crimes Code provided as follows:

> "Intoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution for any offense, evidence of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense."

Section 308 was amended by the Act of April 7, 1976, P.L. 72, No. 32, § 1, immediately effective, to provide that:

> "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant when-

evidence is submitted for the consideration of the fact finder. We have held that intoxication evidence

"[C]reates no new presumption for the defendant and imposes no new burden on the Commonwealth. . . . In *Rose* we stated:

'[The burden to prove the specific intent to kill] is neither increased nor diminished by an attempt by a defendant to disprove the element of intent by a showing of lack of capacity, due to intoxication, to form such an intent. Whether the Commonwealth will, in a particular case, elect to carry that burden without introducing evidence to negate the existence of a disabling condition of intoxication, . . . will be for it to decide; as in every case, the risk of nonpersuasion remains with the Commonwealth.' "

*Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975) (hereinafter *Rose II* ) quoting *Rose I, supra,* 457. Pa. at 389, 321 A.2d at 884.

The Commonwealth may offer any relevant evidentiary response to defense evidence that it chooses, or none whatsoever. It is under no obligation to counter appellant's expert testimony with that of its own, but may rely on lay testimony and the testimony as to surrounding circumstances to prove its case. *Commonwealth v. Zlatovich,* 440 Pa. 388, 393, 269 A.2d 469, 473 (1970); *Commonwealth v. Demmitt,* 456 Pa. 475, 480–83, 321 A.2d 627, 630 (1974); *Commonwealth v. Updergrove,* 413 Pa. 599, 601–03, 198 A.2d 534, 535–36 (1964); Accord, *Rose I, supra.*

The well-known test of the sufficiency of the evidence is whether the evidence, and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to sustain the conviction of murder of the first degree beyond a reasonable doubt. *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975), *cert. denied,* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975). *Commonwealth v. Murray,* 460 Pa. 605,

ever it is relevant to reduce murder from a higher degree to a lower degree of murder."

608, 334 A.2d 255, 257 (1975); *Commonwealth v. McFadden,* 448 Pa. 277, 281, 292 A.2d 324, 326 (1972).

■ Viewed in this light, the evidence in the case at bar is as follows: Appellant entered the Quartman home at approximately 1:00 p.m. on April 27, 1975, and shot and killed his estranged wife in the presence of several eyewitnesses. The victim's father, Leroy Quartman, called as a witness for the Commonwealth, testified that his daughter had left her husband the day before and was staying with Mr. Quartman at his house. Appellant entered the Quartman home without knocking and demanded to talk to his wife outside. After a brief exchange, the witness told Fairell, "I am going to call the cops, I think you are coming here for trouble." Fairell then shouted, "Don't touch the phone", and stated that he came to kill everyone in the house.[7] He then pulled a gun from his pocket, aimed it, and shot twice in the direction of his wife, killing her instantly.[8]

Mrs. Ethel Quartman, mother of the victim, testified that when the defendant appeared in the house he told her, "I am going to get you for that smart talk you were talking to me about." When she retreated towards the kitchen and the telephone, he shouted, "Don't touch that phone . . . nobody move because everybody is going to get killed in here today."[9] Frightened, Mrs. Quartman ran down the hall and into the cellar and in a short while heard shooting upstairs.

These facts were confirmed by the testimony of two other Commonwealth witnesses: Mary Root, a neighbor who was visiting the Quartmans, who ran upstairs when appellant began firing,[10] and Stanley Quartman, the brother of the victim, who also fled after appellant shot his sister.[11] Both

7. N. T. 92, 10/2/75.

8. N. T. 119, 10/2/75.

9. N. T. 7–8, 10/3/75.

10. N. T. 34–35, 10/3/75.

11. N. T. 44–45, 10/3/75.

witnesses corroborated the testimony of Mr. and Mrs. Quartman, and stated that they had heard appellant say that he was going to kill everybody in the house.

There is clearly sufficient evidence in the record in contradiction of appellant's assertion that he was so drugged at the time of the shooting that he could not have formed the requisite specific intent. Appellant threatened to kill everyone in the house, subsequently did shoot his wife, and chased Mr. Quartman out of his home, shooting after him.[12] Mrs. Quartman's unrebutted testimony was that she had known appellant about three years,[13] that appellant was in her home about fifteen minutes before firing the fatal shots, and during this time he threatened her and other people present.[14] Mrs. Quartman further testified that she noticed nothing different about Fairell on that day, that he did not appear to her to have been drinking, and that it appeared to her that he was alert and knew what he was doing.[15] In response to a similar line of questioning, Stanley Quartman stated that, "I seen him [appellant] mean before." [16]

The defense presented the two witnesses mentioned above, appellant's half-brother, John Nelson, and Dr. Levitt. While Nelson testified that he saw appellant with what appeared to be drugs and that Fairell appeared "high" and "not normal", there was no specific evidence as to what the substance was, or that appellant actually took it, or took any drugs or alcohol. It is also significant that in Mr. Nelson's signed statement to the police, given the day of the shooting, he made no mention of drugs or anything unusual about his brother's condition.[17]

12. N. T. 95, 10/2/75.

13. N. T. 13, 10/3/75.

14. N. T. 16, 10/3/75.

15. Id.

16. N. T. 48, 10/3/75.

17. N. T. 38–44, 10/2/75.

It is settled law that the trier of fact may believe any, all, or none of the testimony offered at trial, and that the credibility of the witnesses is for the trier of fact. *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975), *cert. denied,* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1976); *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974). Appellant may not rely upon testimony which the trier of fact is not obliged to accept as true.

Dr. Levitt (who, as chief psychologist for the court of common pleas had examined appellant at length and found him competent to stand trial) testified extensively as to appellant's mental difficulties. He stated that, having testified in criminal cases, both in federal and state courts "hundreds of times", he was familiar with the terms "premeditation" and "specific intent" and that appellant had the capacity to form a specific intent, knew right from wrong, and understood the nature and quality of his act.[18]

█ Finally, appellant arrived at the Quartman home armed with a loaded gun, was there some fifteen minutes before firing it, during which time he made threats later carried out in part, i. e., that he was going to "get" Mrs. Quartman and that "everybody is going to get killed here today". Appellant prevented the witnesses from using the telephone to summon aid, and then used a gun on a vital part of his wife's body. In light of the above, we hold that the evidence was such that a trier of fact could conclude that there was no reasonable doubt of appellant's ability to form the specific intent to kill required for a conviction of murder of the first degree. The Commonwealth met its burden of proof with respect to this element of the offense charged, and the conviction is, accordingly, affirmed.[19]

EAGEN, C. J., and MANDERINO, J., concur in the result.

18. N. T. 92–94, 10/3/75.

19. Appellant also argues that the trial court erred in refusing to grant a continuance due to the temporary unavailability of one of the interrogating detectives whom Fairell wished to question about the detective's beliefs concerning appellant's use of narcotics. Although

counsel took exception to the refusal of his motion, he did not include the point in his motion for a new trial and/or in arrest of judgment. See, Pa.R.Crim.P. 1123(a), P.S. Appendix, effective July 23, 1973. The issue is therefore not preserved for review. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Irwin,* 460 Pa. 296, 333 A.2d 735 (1975).