J-S14006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALVIN HENRY GRASTY | : | |
| | : | |
| Appellant | : | No. 2006 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 23, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007239-2016

BEFORE:  BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 24, 2020**

Alvin Grasty appeals from his June 5, 2018 judgment of sentence imposed following his conviction by jury for first-degree murder, possession of an instrument of crime, and possession of firearms not to be carried without a license.  We affirm.

The facts underlying Appellant's conviction concern the shooting death of Anthony Moore (the "victim").  In the early morning hours of April 30, 2016, Appellant, co-defendant Erikk Wright, and several other individuals were patronizing the Gold Room bar in Chester, Pennsylvania.  While they were there, a fight broke out between two men from the rival areas of Highland Gardens and Bennett Homes.  *See* N.T. Trial, 4/3/18, 98-99, 108-09.  The victim, who was from Bennett Homes, left the bar around this time.  *Id*. at 109-11.  He was closely followed by Appellant, Mr. Wright, and several other

of their compatriots, all of whom were from Highland Gardens. *Id*. at 109-111. As the victim approached the intersection of Edgmont Street and Fifth Street, he broke into a sprint in an attempt to evade his pursuers. *Id*. at 114. Appellant and Mr. Wright produced guns and opened fire upon the victim, who fell to the ground. Surveillance cameras from both the Gold Bar and another nearby business captured these events from several different perspectives. *Id*. 114. After the shooting, Appellant, Mr. Wright, and the remaining men fled the scene in a car. *Id*. at 114-115.

Contemporaneously, officers of the Chester Police Department were responding to a call from the Gold Room. *See* N.T. Trial, 4/2/18, at 38-39. The responding officers discovered the victim bleeding from multiple gunshot wounds. He was pronounced dead at the scene. *Id*. at 38-40. Detectives later viewed the aforementioned surveillance footage. *Id*. at 21, 95-96. This footage showed, *inter alia*, Appellant and Mr. Wright firing their weapons at the victim in the same area where shell casings were discovered. *See* N.T. Trial, 4/3/18, at 80-83. The guns that were used by Appellant and Mr. Wright in the shooting were never recovered. *Id*. at 21.

Several weeks later, police detectives conducted a recorded interview with Appellant. *See* N.T. Trial, 4/3/2018, 193-195, 200. After Appellant was read his *Miranda*[1] warnings, he voluntarily waived his rights under the Fifth

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Amendment to the U.S. Constitution. *Id*. at 195-197. Appellant initially denied seeing or shooting the victim that night. *Id*. at 202-03, 207-08. After police revealed the existence of the surveillance footage, Appellant confessed to carrying a gun and shooting it that night. *Id*. at 220-21, 223, 227-29; *see also* Statement of Alvin Grasty, 5/23/16, at 11-12. However, Appellant could not remember what kind of gun he was carrying that evening, other than that it was a handgun. *See* N.T. Trial, 4/3/18, at 224 ("[H]onestly, I don't know what type of gun it was."). Throughout the interview, he disclaimed that he had fired the fatal shots.

Appellant and Mr. Wright were charged in connection with these events, and jointly tried before a jury in the Delaware County Court of Common Pleas. At trial, the Commonwealth played Appellant's recorded statement to police, along with a compilation of the surveillance video footage. Although neither gun used in the shooting was recovered, the Commonwealth adduced evidence and testimony suggesting that Appellant had fired a 9 millimeter handgun that evening, while Mr. Wright had fired a .40 caliber handgun. *See* N.T. Trial, 4/2/18, at 82-83. The Commonwealth also presented expert medical testimony and corroborating testimony that the victim died as the collective result of four gunshot wounds distributed throughout his body. *See* N.T. Trial, 4/3/18, at 183-91. Bullets and fragments were recovered from the victim's body, but at least one projectile was not recovered. *Id*. Most of the

projectiles recovered from the victim's body appeared to be .40 caliber, but at least one fragment was too small to be measured. *Id*. at 177-78.

Ultimately, Appellant was found guilty of the above-referenced offenses.[2] On May 23, 2018, the court sentenced Appellant to life without parole as to his conviction for first-degree murder, and an aggregate consecutive term of 30 to 60 months of imprisonment on the remaining charges. Appellant timely appealed, and both Appellant and the trial court have timely complied with their obligations under Pa.R.A.P. 1925.

In his brief, Appellant raises the following three issues for our review:

1. Whether the trial court erred when it failed to find that there was insufficient evidence to support a guilty verdict on first-degree murder where [the] Commonwealth failed to establish beyond a reasonable doubt that Appellant possessed the specific intent to kill.

2. Whether the trial court abused its discretion when it failed to properly and completely instruct the jury on the theory of accomplice liability, such that it could equally convict Appellant of third-degree murder as a viable alternative to first-degree murder. Whether the trial court compounded its charging error when it mistakenly responded to jury inquiries as to correct, legal application of accomplice liability toward Appellant.

3. Whether the trial court abused its discretion in denying Appellant's post-sentence motion where the verdict of guilt for first-degree murder beyond a reasonable doubt was against the weight of the evidence.

Appellant's brief at 4 (excessive capitalization omitted).

---

[2] Mr. Wright was found guilty of third-degree murder, along with related charges. He was sentenced to an aggregate term of 18 to 36 years of imprisonment, followed by a five-year period of probation.

We begin by reviewing Appellant's claim that the Commonwealth failed to produce sufficient evidence of his specific intent to kill the victim. Our scope and standard of review over such a claim is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. McClelland*, 204 A.3d 436, 441 (Pa.Super. 2019) (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)).

Our law defines first-degree murder as a homicide committed by an intentional killing. 18 Pa.C.S. § 2502(a). In this context, "intentional killing" is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). In order to convict a defendant of first-degree murder, "the Commonwealth must prove beyond a reasonable doubt that the killing was willful, deliberate and premeditated and that at the time of the killing the defendant was not acting with a diminished capacity."[3] *Commonwealth v. Zettlemoyer*, 454 A.2d

_____

[3] To the extent that Appellant argues that he could not possess the specific intent to kill that night due to being intoxicated prior to the shooting, we note that "[t]he burden to prove the specific intent to kill is neither increased nor

937, 982 (Pa. 1982). The Commonwealth must also prove beyond a reasonable doubt that the defendant possessed the specific intent to kill, which is defined under Pennsylvania law as "the presence, within the accused, of a fully formed purpose to take a life . . . ." *Commonwealth v. Wayne*, 720 A.2d 456, 464 (Pa. 1998). Indeed, the specific intent to kill is what distinguishes first-degree murder from the other grades of homicide. *See Commonwealth v. Smith*, 694 A.2d 1086, 1088 (Pa. 1997). Finally, the Commonwealth may sustain this burden of proof entirely by circumstantial evidence. *Commonwealth v. Cousar*, 928 A.2d 1025, 1033 (Pa. 2007) (citing *Commonwealth v. Harper*, 403 A.2d 536, 538-39 (Pa. 1979)).

Our Supreme Court has held that "[i]f a deadly force is knowingly applied by the actor to the person of another, the intent to take life is evident as if the actor stated the intent to kill at the time the force was applied." *Commonwealth v. Meredith*, 416 A.2d 481, 485 (Pa. 1980). Our courts have also consistently held that guns are capable of producing such a "deadly" force. *See Commonwealth v. Scullin*, 607 A.2d 750, 753 (Pa.Super 1992). Indeed, our legislature has explicitly defined "deadly weapon" as "any firearm, whether loaded or unloaded." 18 Pa.C.S. § 2301.

---

diminished by an attempt by a defendant to disprove the element of intent by a showing of lack of capacity, . . . ." *Commonwealth v. Fairell*, 381 A.2d 1258, 1261 (Pa. 1977).

Appellant contends that the Commonwealth did not produce sufficient evidence to prove beyond a reasonable doubt that Appellant possessed the specific intent to kill the victim. **See** Appellant's brief at 11. He further argues that the Commonwealth adduced no physical or scientific evidence to indicate that Appellant delivered the fatal gunshot wounds. **Id**. at 9. Finally, Appellant also contends that the Commonwealth's video evidence was ambiguous, and that his recorded statement to police did not adequately demonstrate that he possessed the required *mens rea* to prove first-degree murder. **Id**.

As stated above, evidence of use of deadly force on the person of another is sufficient to prove specific intent to kill, as though the intent had been spoken. **See Meredith**, **supra** at 485. At trial, the Commonwealth introduced video evidence of the street outside of the bar, which showed Appellant and the other men following the victim, as well as Appellant and Mr. Wright pointing and firing guns at the victim.[4] **See** N.T. Trial, 4/2/18, at 114. The Commonwealth also introduced the recordings of Appellant's statements to detectives, wherein Appellant admitted to carrying a firearm that night and

---

[4] We note that the fact that both Appellant and Mr. Wright shot the victim, and it is unclear who was responsible for ultimately causing his death, is of no moment. **See**, **e.g.**, **Commonwealth v. Johnson**, 985 A.2d 915, (Pa. 2009) (finding sufficient evidence to support defendant's first-degree murder conviction where he and an unnamed second individual shot the victim to death with different firearms, and the Commonwealth could not definitively establish which assailant caused the victim's death).

- 7 -

discharging it four or five times. **See** N.T. Trial, 4/3/18, at 200, 202, 227-29; **see also** Statement of Alvin Grasty, 5/23/16 at 11-12.

While Appellant maintains that there is no direct evidence that he fired the fatal shot, the uncontroverted circumstantial evidence adduced by the Commonwealth indicated that he opened fire on the victim along with Mr. Wright. **See** N.T. Trial, 4/02/18, at 114. Our courts have long maintained that "a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts or circumstances which are of such a nature to prove defendant's guilt beyond a reasonable doubt." **Commonwealth v. Tyrrell**, 174 A.2d 852, 856 (Pa. 1961). Here, Appellant's specific intent to kill was evinced by the video footage of Appellant aiming and firing a gun at the victim after Appellant, Mr. Wright, and other men tailed the victim out of the bar. Appellant's intentional pursuit of the victim out of the bar, coupled with his act of discharging a handgun at the victim after he attempted to flee sufficiently demonstrates a fully formed purpose to take a human life. **See Meredith**, **supra** at 485. No relief is due as to Appellant's first claim.

Appellant's second issue asserts that the trial court erred by improperly instructing the jury on how to apply the theory of accomplice liability. **See** Appellant's brief at 16. Specifically, Appellant contends that the court abused its discretion by failing to instruct the jury on accomplice liability for third-degree murder as an alternative to first-degree murder. **Id**.

When challenging a jury charge, a criminal defendant must raise objections to the jury charge on the record before the jury retires to deliberate, otherwise the objection to the jury instructions is waived. **See** Pa.R.Crim.P. 647(B). "[M]ere submission and subsequent denial of proposed points for charge" is insufficient to preserve a jury charge issue for appeal. **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005). Absent such an objection, the issue is waived. **Id**.

Instantly, Appellant did not object after the trial court read the jury charge. **See** N.T. Trial 4/5/18, at 134. In fact, when specifically queried by the trial court as to whether he had any objections, Appellant replied in the negative. **See** N.T. Trial 4/5/18, at 134. Accordingly, Appellant has waived his second issue. **Accord Pa.R.Crim.P.** 647(B); **Pressley**, **supra** at 225.

Appellant's third claim asserts that his verdict was against the weight of the evidence, and claims that the trial court erred in denying Appellant's post-sentence motion on that ground. The bulk of Appellant's argument for a new trial rests on his above-discussed theory that there was "no competent evidence" to demonstrate Appellant possessed the specific intent to kill the victim. Appellant's brief at 24.

A motion for a new trial under Pa.R.Crim.P. 720 alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court, and an appellate court will only review the exercise of that discretion, **not** the underlying question of whether the verdict was against the

- 9 -

weight of the evidence. ***See Cousar***, ***supra***, at 1035-36. A trial court will only grant a new trial "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Id***. Our review is limited to whether the trial court judge's exercise of discretion was proper, and we will only grant relief where the record indicates a "palpable abuse of discretion." ***Id***. It has been said that "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Id***. (citing ***Commonwealth v. Keaton***, 729 A.2d 529, 540-41 (Pa. 1999)).

The trial court discussed the weight of the Commonwealth's evidence as follows in its Rule 1925(a) opinion:

> The evidence in this trial was overwhelming. In [Appellant's] recorded statement to police, he admitted he had gone and retrieved a gun from his friend's vehicle. He also admitted that he went back to his friends and shot the gun 4-5 times. On the surveillance tapes retrieved by police, officers identified [Appellant] as the one who was shooting the gun in the direction of the deceased. When [Appellant] shot his gun at the deceased, the deceased fell down. The deceased, who died from his gunshot wounds, was found by Officer Grenier. Around the deceased Officer Swanson found eight 9mm shells and eleven 40 caliber shells. Defendant admitted that he had shot either a 9mm or 40 caliber hand gun.
>
> Using this evidence, a jury could easily conclude that [Appellant] had retrieved his gun for the purpose of shooting the deceased a lethal amount of times. Therefore, the court did not err when it denied [Appellant's] post-sentence motion, because he did not provide any new evidence, and the evidence that was provided showed clearly that [Appellant] committed first-degree murder.

Trial Court Opinion, 6/20/19, at 5-6 (internal citations omitted).

As is apparent from the trial court's assessment of the evidence, the jury's verdict did not shock its conscience. Hence, the trial court properly exercised its discretion in denying Appellant's motion for a new trial based on the weight of the evidence. No relief is due on Appellant's third claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/20