J-S19042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID WILLIAM LANGE | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002319-2017

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: DECEMBER 6, 2024**

Appellant David William Lange appeals from the judgment of sentence entered following his conviction of first-degree murder.  Upon careful review, we affirm.

On October 22, 2017, Appellant shot his wife, Kathleen Lange ("Victim") after an evening of drinking and arguing.  The couple's fifteen-year-old daughter witnessed the incident, having been awakened by the arguing. Victim called 911, and responders were unsuccessful in their attempts to perform lifesaving measures.  Appellant's BAC was .20% at the time of the shooting.

The trial court summarized the procedural history as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

A criminal complaint was filed against [Appellant] on October 22, 2017[, charging him with criminal homicide]. [Appellant] filed multiple continuances and the [c]ourt continued the matter due to the Covid-19 pandemic. The Commonwealth filed a Motion for a Status Conference on February 24, 2021, which the [c]ourt subsequently scheduled for April 5, 2021. [Appellant] then filed several motions to continue the matter. Trial was set to begin on December 6, 2021. [Appellant] filed several more continuances and a pretrial conference was scheduled for January 31, 2022. The case was then set for a Pick and Go Criminal Jury Trial from Monday December 5, 2022 through December 16, 2022. At the conclusion of the trial on December 13, 2022, the jury found [Appellant] guilty of First[-]Degree Murder. The [c]ourt scheduled [Appellant's] sentencing for February 1, 2023.

Trial Court Order in Lieu of Opinion, 11/8/23, at 1-2. After the withdrawal and appointment of new defense counsel, on March 27, 2023, the trial court sentenced Appellant to serve a term of life imprisonment without parole.

Appellant made an oral request for an extension of time to file post-sentence motions, seeking thirty days after the receipt of transcripts of the trial and jury selection. *See* N.T., 3/27/23, at 12. On March 28, 2023, the trial court entered an order granting Appellant's request. The last of the requested transcripts was filed on April 17, 2023, and Appellant filed his post-sentence motion within thirty days thereafter. The trial court denied the motion on September 8, 2023. This timely appeal from the judgment of sentence followed. *See Commonwealth v. Horst*, 481 A.2d 677, 677-78 (Pa. Super. 1984) (finding that a defendant may toll the time in which to file an appeal if within the established ten-day period, the defendant files a request for extension of time in which to file a post-sentence motion).

Appellant presents the following issues for review in this appeal:

1. Whether the evidence presented at trial failed to prove every element of the crime charged beyond a reasonable doubt and, therefore, was insufficient to support [Appellant's] conviction?

2. Whether the guilty verdict following [Appellant's] trial was against the weight of the evidence presented?

Appellant's Brief at 8 (suggested answers omitted).

Appellant first argues that the Commonwealth did not present sufficient evidence to sustain his conviction of first-degree murder. *See* Appellant's Brief at 20-23. Appellant contends there was a "lack of evidence presented at trial regarding the specific intent to kill," *Id*. at 18, which he claims was negated by his defense of voluntary intoxication. After revisiting the expert testimony offered by both the defense and the Commonwealth concerning his level of intoxication, Appellant concludes that "the Commonwealth did not have evidence to dispute Appellant's argument that his voluntary intoxication … overpowered his decision making capabilities and made him lose control over his faculties such that he could not form the specific intent to kill." *Id*. at 23. We disagree.

We analyze arguments challenging the sufficiency of the evidence under the following parameters:

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so

- 3 -

weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citations omitted).

Murder is defined, in relevant part, as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. § 2502(a). The Pennsylvania Supreme Court has discussed the elements of first-degree murder as follows:

To convict a defendant of first degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill.

*Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011) (internal citations omitted.)

A killing is intentional if it is done in a willful, deliberate and premeditated fashion. 18 Pa.C.S. § 2502(d). The period of reflection needed to establish deliberation and premeditation may be as brief as a fraction of a second. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009). Indeed, the deliberation and premeditation needed to establish intent exist whenever the assailant possesses the conscious purpose to bring about death.

*See id*. The Commonwealth may use circumstantial evidence to establish the elements of first-degree murder, including the element of intent. *See id*. We have explained that "[a] specific intent to kill may be proved by wholly circumstantial evidence and may be inferred by the defendant's use of a weapon on a vital part of the victim's body." *Commonwealth v. Miller*, 897 A.2d 1281, 1285 (Pa. Super. 2006) (citations omitted).

"The defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." *Commonwealth v. Sanchez*, 82 A.3d 943, 977 (Pa. 2013).

As provided in 18 Pa.C.S. § 308, Pennsylvania courts do not recognize a defense of voluntary intoxication to negate an element of intent of an offense with the exception of murder convictions. Specifically, "[n]either voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge." 18 Pa.C.S. § 308. However, our Supreme Court has long stated that "[e]vidence of substantial intoxication ... [, i]f believed, [] may negate the intent to kill necessary for a conviction of murder in the first degree, and a defendant is entitled to an instruction to that effect." *Commonwealth v. Rose*, 344 A.2d 824, 826 (Pa. 1975) (citation omitted).

> In order for intoxication to negate the specific intent to kill necessary for first degree murder, the evidence presented must show defendant was unable to form the specific intent because he or she was so overwhelmed or overpowered by [alcohol] to the

- 5 -

point of having lost his faculties at the time of the crime.

***Commonwealth v. Miller***, 897 A.2d 1281, 1285 (Pa. Super. 2006) (citations omitted).

Although the Commonwealth's burden of proof remains unchanged, the burden is on the defendant to establish a diminished capacity by a preponderance of the evidence. ***See Commonwealth v. Collins***, 810 A.2d 698, 701 (Pa. 2002). ***See also Commonwealth v. Stoyko***, 475 A.2d 714, 720 (Pa. 1984) (stating that "intoxication evidence, offered in an attempt to negate the intent necessary for a conviction for murder of the first degree, imposes no new burden on the Commonwealth and creates no new presumption for defendant which the Commonwealth must labor to overcome"). We are also mindful that "[w]hether a defendant has established that his faculties and sensibilities were so overwhelmed with drugs so that he could not form the specific intent to kill is a question of fact solely within the province of the jury, who is free to believe any, all, or none of the testimony regarding intoxication." ***Commonwealth v. Vandivner***, 962 A.2d 1170, 1177 (Pa. 2009) (citations and quotation marks omitted).

We begin our review of this sufficiency claim by considering whether the Commonwealth presented evidence sufficient to prove the element of specific intent. The trial court set forth the following summation of evidence supporting the jury's conclusion that the Commonwealth established Appellant's specific intent to kill Victim:

In the present case, giving the Commonwealth the benefit of all reasonable inferences drawn from the evidence, all material elements for First Degree Murder were established at trial. The Commonwealth established that [Appellant] entered the home and after he and the Victim argued, he grabbed the gun that he keeps in the side pocket of his chair. Exhibit 790 5:30 to 6:45.[1] [Appellant] kept the gun at his hip and then raised the gun when the Victim told him "go fuck yourself" and took a step toward him, then [Appellant] pulled the trigger and shot the Victim. *Id*. at 8:30-9:22. The use of a deadly weapon on a vital part of a victim's body indicates the specific intent to kill. Based on the stains on the Victim's sweater, [Appellant] stood less than four feet away from the Victim and shot her in the chest. N.T. 12/8/2022 p. 68. The Commonwealth established that the entrance wound was at the bottom of the Victim's chin on the right side of the upper chest. N.T. 12/7/2022, p. 29-30. Based on this evidence, there was enough circumstantial evidence for the Commonwealth to prove the specific intent to kill.

Trial Court Opinion, 9/8/23, at 6 (unnumbered) (case citations omitted).

Likewise, our review of the record supports the conclusion reached by the trial court. The defense presented testimony from an expert witness, Dr. Frank Dattilio, who narrated a summary of the evidence surrounding the shooting. He explained that Appellant and Victim were driving home from a bar just before 2:00 a.m. and were having an argument in the vehicle. When they arrived at their home, Appellant stayed in the car to "cool off" and smoke a cigarette. *See* N.T., 12/12/22, at 45-47. It is undisputed that the situation escalated when Appellant entered the home. Appellant's fifteen-year-old

---

[1] The following Commonwealth Exhibits were made part of the certified record and transmitted to this Court for review: Exhibit 788, Pennsylvania State Police video footage; Exhibit 790, Interview of Appellant at Chambersburg Hospital; and Exhibit 797, 911 call.

daughter was awakened and opened her bedroom door to witness Victim on the ground and Appellant "on top of her yelling in her face." N.T., 12/6/22, at 66. The daughter further testified concerning the incidents of the shooting, including that Appellant and Victim got off the floor and went to the living room, Appellant pulled out his gun and pointed it directly at Victim, Victim was pleading with Appellant that he not shoot her, and Appellant then shot Victim. *See id*. at 70-72.

A pathology expert testified that Victim was shot in her chest, with the bullet exiting her back. *See* N.T., 12/7/22, at 29-31. In addition, Todd Neumyer, an expert in tools marks and firearm examination, testified on behalf of the Commonwealth. Mr. Neumyer offered detailed testimony concerning the operability of the firearm in question and specifics concerning the ammunition discharged and that a second round of ammunition was located inside the gun indicating that it malfunctioned when it was fired another time. *See* N.T., 12/8/22, at 47-76. Thus, the Commonwealth established that Appellant had an opportunity to cool off prior to the escalated moments inside of the home, he ignored pleas that he not shoot Victim, and Appellant attempted to shoot the firearm a second time. This circumstantial evidence establishes Appellant's specific intent to kill Victim. Therefore, we conclude that the actions taken by Appellant were sufficient to prove that Appellant did the killing necessary for first-degree murder beyond a reasonable doubt.

We next address Appellant's claim that he was so impaired by his alcohol consumption on the day of the shooting that he could not form specific intent. Appellant presented this defense to overcome the circumstantial evidence supporting his specific intent to kill Victim.

In addressing whether the evidence established that Appellant could not form specific intent due to his intoxicated condition, the trial court presented the following discussion, which we adopt as our own:

> The jury heard from multiple experts throughout the course of [Appellant's] trial. Dr. Francis Dattilio, the Defense's witness, was admitted as an expert in clinical and forensic psychology. N.T. 12/12/2022, p. 30. Dr. Dattilio testified that [Appellant's] litany of health issues along with his heavy drinking caused a "delirious effect" which he defined as a "very negative effect to his condition because he was taking a lot of medicine." *Id*. at 42. The jury listened as Dr. Dattilio testified that based on his interview with [Appellant] he was able to come to the conclusion that [Appellant] shot his wife because he was "just responding to the tension that night" but he did not intend to kill the Victim. *Id*. at 57-61. He testified that there was a disconnect to [Appellant's] brain and that he could conclude to a reasonable degree of scientific certainty that the level [Appellant's] intoxication paired with his cries that he did not want to hurt the Victim that he did not intend for her to die. *Id*. at 61-62. The jury also heard testimony from Dr. Dattilio that his conclusions were based on [Appellant's] accounts and that he did not interview [] [Appellant's] daughter who was in the home on the night in question. *Id*. at 81.
>
> The jury then heard testimony from [Appellant's] witness, Dr. Lawrence Guzzardi, who was admitted as an expert in medical toxicology. *Id*. at 107. Dr. Guzzardi concluded that "[b]ased upon the high level of alcohol present, the effects of alcohol in general and then specifically, on [Appellant], his various medical problems, the emotional nature of the event, the incident, the shooting that I do not believe he was capable of forming [the] specific intent to kill his wife." *Id*. at 111. Dr. Guzzardi testified that at the time of the shooting, [Appellant] "was not able to

- 9 -

cognitively fully understand the implications of what he was doing and he did not form an intent to kill his wife." *Id*. at 131. Dr. Guzzardi testified that based on the abuse that [Appellant] faced during his childhood and the amount of alcohol in his system, it was harder to control his impulses during intense stress. *Id*. at 126. However, much like Dr. Dattilio, Dr. Guzzardi did not speak to [Appellant's daughter] before making his conclusions. *Id*. at 142.

The Commonwealth's witnesses disagreed with the Defense experts' conclusions. Robert Middleberg was qualified as an expert in forensic toxicology and told the jury that based on his analysis of the case, [Appellant] was not impaired to a degree that rendered him incapable of physical actions, awareness and judgment at the time of the shooting. N.T. 12/13/2022, p. 13. The Commonwealth's rebuttal witness, Dr. David Zehrung, was qualified as an expert in clinical psychology. N.T. 12/12/2022, p. 155-157. Dr. Zehrung testified that it was his opinion that "[Appellant] was not so intoxicated that he could not form the intent to kill Mrs. Lange." *Id*. at 161. The jury learned that Dr. Zehrung based his conclusion on [Appellant's] behaviors on the 911 recording, his time in the back of the Pennsylvania State Police vehicle, and the recorded interview between [Appellant] and law enforcement at the hospital. *Id*. Specifically, Dr. Zehrung testified that the 911 call demonstrated that [Appellant]

> [W]as still able to form intentions during the 911 call. Intentions to concentrate, despite all kinds of distracting things going on, his daughter screaming, his wife dying, he's still able to answer questions. He corrected people regarding information. So he was listening, monitoring and correcting, because he intended them to have accurate information at the time.
>
> He complied with demands of 911 and then State Police. He walked backward with his hands behind his head, knelt, crossed his feet. Prior to that, he, according to [Appellant's daughter], in her recorded statement, told her to go back to her room, to stay out of it. That's a mental intention.
>
> I intend for you to not be in this situation, I intend for you to go to your room. From that intent the words

- 10 -

flew out. These are a few of the things that support his behavior. It's recorded. What must be true mentally to produce that behavior.

*Id*. at 169. Dr. Zehrung explained that "the capacity to form intention involves awareness of one's surroundings and one's self" and [Appellant's] statements during his interview with law enforcement indicated that he raised his gun to a vital part of the Victim's body and chose to pull the trigger. *Id*. at 172-79. Based on this information, Dr. Zehrung concluded that [Appellant] intended to kill the Victim. *Id*. at 179.

Trial Court Opinion, 9/8/23, at 7-10 (unnumbered).

Upon thorough review, we conclude that the trial court's analysis is supported by the record. As noted, the jury was free to believe any or all of the evidence presented as to whether Appellant could form the specific intent to kill despite his level of intoxication. *See Vandivner*, 962 A.2d at 1177. There was evidence presented to establish that, although intoxicated with a BAC of .20%, Appellant did continue to possess the mental acuity to support his conviction of first-degree murder. Here, the jury clearly believed the Commonwealth's evidence and found that Appellant's intoxication did not negate his specific intent to kill. We will not substitute our judgment for that of the jury. *See id.* Consequently, Appellant failed to meet his burden of proving that intoxication negated his specific intent to kill Victim. Appellant is therefore not entitled to relief on his first appellate issue.

We next address Appellant's issue challenging that the verdict was against the weight of the evidence. *See* Appellant's Brief at 23-24. Appellant argues that the trial court abused its discretion in denying his post-sentence

- 11 -

motion challenging the weight of the evidence. He asserts that in light of the evidence presented, the jury could not have found that Appellant formed the specific intent to kill required for a conviction of murder of the first degree. Particularly, Appellant claims, "Given the overwhelming amount of evidence presented to the jury regarding Appellant's level of intoxication at the time of the shooting and his behavior directly following, the Commonwealth's claim that Appellant had a fully formed specific intent to kill is simply not believable." *Id*. at 24.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part or none of the evidence and to determine the credibility of witnesses. *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (citation omitted). When considering a motion that a verdict was against the weight of the evidence, a "trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Chamberlain*, 30 A.3d 381, 396 (Pa. 2011) (citation omitted).

This Court's standard of review of a trial court's decision regarding a weight of the evidence claim is limited to determining whether the trial court palpably abused its discretion in concluding that the verdict was or was not against the weight of the evidence. *See Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the

gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa. Super. 2015) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

The jury, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth and the logical inferences derived therefrom, as was its right. In rejecting Appellant's claim challenging the weight of the evidence, the trial court offered the following:

> At the conclusion of the trial, this [c]ourt instructed the jury regarding expert witness testimony. Specifically, this [c]ourt explained that jurors are the sole judges of the credibility and weight of all testimony. N.T. 12/13/23, p. 90. If the testimony from one expert witness conflicts with the testimony of another expert witness, then the jury may decide what parts, if any, they choose to believe. The jurors listened to the conflicting expert testimony and put that into context with the physical evidence collected by law enforcement along with [Appellant's] own actions and statements from the several recordings played throughout the course of the trial. ***See*** Exhibit 797; Exhibit 788; Exhibit 790. The jury heard testimony that the gun used in the shooting stove piped, meaning that a type of malfunction that occurred that prevented the gun from being fired a second time because of an obstruction. N.T. 12/8/2022, p. 58-60. One bullet hit the Victim and another bullet failed to discharge from the gun, leaving the firearm incapable of discharging until the bullet obstructing the gun was cleared. ***Id***. Based on all of the testimony and evidence presented, the jury made a credibility determination and ultimately chose to reject the voluntary intoxication defense. This

> [c]ourt will not substitute its own credibility determinations and act as a thirteenth juror.

Trial Court Opinion, 9/8/23, at 10 (citation omitted).

Again, it was within the province of the jury as factfinder to resolve all issues of credibility, resolve any conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Appellant guilty. The jury weighed the evidence, chose to believe the Commonwealth's experts concerning Appellant's level of voluntary intoxication and its effect on him, and concluded Appellant had the requisite specific intent to kill Victim, which supports the conviction of first-degree murder. The trial court did not err in concluding the verdict was not so contrary to the evidence so as to shock one's sense of justice. Therefore, we decline Appellant's invitation to assume the role of factfinder and to reweigh the evidence presented at his trial. Accordingly, we conclude that the trial court did not abuse its discretion in determining Appellant's weight of the evidence claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2024

- 14 -